John W. Dozier, Jr. (Admitted *pro hac vice*)
Donald E. Morris (DM 9138)
Christopher J. Wesser (Admitted *pro hac vice*)
Cameron Gilbert (CG 5352)
DOZIER INTERNET LAW, P.C.
11520 Nuckols Road, Suite 101
Glen Allen, VA 23059
Telephone: (804) 346-9770

*Attorneys for Defendant FragranceX.com, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

FragranceNet.com, Inc.,

                       Plaintiff,

v.                                                                        CV 06 2225 (JFB) (AKT)

FragranceX.com, Inc.,

                       Defendant.

---------------------------------------------------------X

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF FRAGRANCEX.COM, INC.'S MOTION FOR**
**<u>A PROTECTIVE ORDER PURSUANT TO FED.R.CIV.PRO. RULE 26(C)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………....   i

BACKGROUND…………………………………………………………....   2

ARGUMENT

    FRAGRANCEX'S MOTION FOR A PROTECTIVE ORDER SHOULD BE GRANTED…   6

A.    THE CONFIDENTIALITY AGREEMENT PROHIBITS
    DENNIS APFEL FROM VIEWING DOCUMENTS
    DESIGNATED "ATTORNEYS' EYES ONLY"………………………………....   7

B.    EVEN IF THE CONFIDENTIALITY AGREEMENT DOES NOT
    PROHIBIT DENNIS APFEL FROM VIEWING "ATTORNEYS'
    EYES ONLY" DISCOVERY, FRAGRANCEX IS ENTITLED
    TO A PROTECTIVE ORDER TO PROHIBIT SUCH DISCLOSURE………………..   8

CONCLUSION……………………………………………………………   18

## TABLE OF AUTHORITIES

<u>CASE LAW</u>

*A. Hirsh, Inc. v. U.S.*,
     11 C.I.T. 208, 657 F.Supp. 1297 (Int'l Trade 1987)……………...........    17

*Ajettix Inc. v. Raub*,
     9 Misc.3d 908, 804 N.Y.S.2d 580 (New York County 2005)……………    16

*Alpert v. 28 Williams Street Corp.*,
     63 N.Y.2d 557, 473 N.E.2d 19 (1984)…………………………………    16

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
     171 F.R.D. 135 (S.D.N.Y. 1997)………………………………………    8

*Blue Chip Emerald LLC v. Allied Partners Inc.*,
     299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dep't 2002)……………………    16

*Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*,
     236 F.R.D. 129 (E.D.N.Y. 2006)………………………………………    9

*Four Star Capital Corp. v. Nynex Corp.*,
     183 F.R.D. 91 (S.D.N.Y.1997)…………………………………………    9

*F.T.C. v. Exxon Corp.*,
     636 F.2d 1336 (D.C. 1980)……………………………………………..    15

*Gambale v. Deutsche Bank AG*,
     377 F.3d 133 (2d Cir. 2004)……………………………………………    6

*Globe Woolen Co. v. Utica Gas & Elec. Co.*,
     224 N.Y. 483, 121 N.E. 378 (1918)……………………………………..    16

*Hochstein v. Microsoft Corp.*,
     2008 WL 4387594 (E.D.Mich. 2008)…………………………………..    7

*Matsushita Elec. Indus. Co. v. United States*,
     929 F.2d 1577 (Fed.Cir.1991)…………………………………………..    14-15

*Meridian Enterprises Corp. v. Bank of America Corp.*,
     2008 WL 474326 (E.D. Mo. 2008)……………………………………..    15

*Norbrook Laboratories Ltd. v. G.C. Hanford Manufacturing Co.*,
     2003 WL 1956214 (N.D.N.Y. 2003)……………………………………    14-15

*Pall Corp. v. Entegris, Inc.*,
     2008 WL 5049961 (E.D.N.Y. 2008)……………………………………………  7

*Rates Technology Inc. v. Mediatrix Telcom, Inc.*,
     2007 WL 2581776 (E.D.N.Y. 2007)……………………………………………  15

*Sullivan Marketing, Inc. v. Valassis Communications, Inc.*,
     1994 WL 177795 (S.D.N.Y., May 5, 2004)…………………………………  14

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*,
     236 F.R.D. 146, 149 (W.D.N.Y.2006)………………………………………  15

*U.S. Steel Corp. v. United States*,
     730 F.2d 1465 (Fed.Cir.1984)………………………………………………..  14-15

*Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*,
     1999 WL 13257, (S.D.N.Y. Jan 13, 1999)…………………………………  8

*In re Zyprexa Injunction*,
     474 F.Supp.2d 385 (E.D.N.Y., 2007)………………………………………  8

S<small>TATUTES</small>

Fed.R.Civ.P. Rule 26(c)……………………………………………………………. *passim*

John W. Dozier, Jr. (Admitted *pro hac vice*)
Donald E. Morris (DM 9138)
Christopher J. Wesser (Admitted *pro hac vice*)
Cameron Gilbert (CG 5352)
DOZIER INTERNET LAW, P.C.
11520 Nuckols Road, Suite 101
Glen Allen, VA 23059
Telephone: (804) 346-9770

*Attorneys for Defendant FragranceX.com, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

FragranceNet.com, Inc.,

       Plaintiff,

v.              CV 06 2225 (JFB) (AKT)

FragranceX.com, Inc.,

       Defendant.
----------------------------------------------------------X

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF FRAGRANCEX.COM, INC.'S MOTION FOR
A PROTECTIVE ORDER PURSUANT TO FED.R.CIV.PRO. RULE 26(C)**

Defendant, FragranceX.com, Inc. ("FragranceX"), respectfully submits this Memorandum of Points and Authorities in support of its Motion seeking a protective order pursuant to Fed.R.Civ.Pro. Rule 26(c) prohibiting Dennis T. Apfel, Esq., CEO, CFO and Chairman of the Board of Plaintiff, FragranceNet.com, Inc. ("FragranceNet") and any other persons other than counsel of record in this case, from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Confidential Information Attorneys' Eyes Only" or the like (hereinafter referred to as "Attorneys' Eyes Only").

As will be detailed *infra*, FragranceX's motion for a protective order should be granted because:

<blockquote>

(A)    the "Stipulation and Order Governing the Production of Documents and Information" so-ordered by the Court on October 30, 2008 ("Confidentiality Agreement") prohibits anyone other than "attorneys of record and in-house attorneys for the parties in this Action…" from viewing documents marked "Attorneys Eyes Only" and Mr. Apfel admittedly acts as FragranceNet's CEO and is actively involved in its day-to-day affairs;[1] and

(B)    even if the Confidentiality Agreement does not expressly prohibit disclosure of "Attorneys' Eyes Only" materials to Mr. Apfel, FragranceX has established good cause to prevent disclosure to him.

</blockquote>

The parties have met and conferred regarding this issue on numerous occasions without a resolution.  *See* Docket Entries 64, 74 and 77.  Moreover, while the Court had suggested that Mr. Apfel be deposed prior to this application to get a better understanding of his roles with Plaintiff, Defendant agrees that Mr. Apfel is acting in some capacity as legal counsel in this case.  Thus, the only remaining question is whether Mr. Apfel is also acting in some business capacity for FragranceNet.  Based on Plaintiff's admissions to the Court and its filings with the Securities and Exchange Commission detailing Mr. Apfel's management roles with FragranceNet, that question has also been answered, eliminating the need for Mr. Apfel's deposition prior to this motion.

## BACKGROUND

Internet retailers FragranceNet and FragranceX are direct competitors engaged in the sale of women's perfume, men's cologne and other beauty products such as lotions and makeup.  Even though FragranceNet started doing business four years earlier than

---

[1] A copy of the Confidentiality Agreement is annexed to the Declaration of Donald Morris, Esq. executed on July 24, 2009 (the "Morris Decl.") as **Exhibit "A"**.

FragranceX, FragranceX's website, www.fragrancex.com, has quickly gained market share, garnering nearly as much web traffic as www.fragrancenet.com.[2]  FragranceX's growth is attributable to its ability to consistently charge less than FragranceNet for the very same products, which is undercutting FragranceNet's business model and ability to compete.  Given that FragranceNet sells and ships a higher volume of products than FragranceX, the opposite would be true if everything else about their respective businesses was equal and FragranceNet would have an advantage in pricing.  Thus, the difference between the two companies is in FragranceX's proprietary trade secret practices and methodologies and this case is in great part the Plaintiff trying to obtain this proprietary information to understand its inability to effectively compete with FragranceX and avoid further loss of its market share.

When FragranceX's growth became a threat to FragranceNet's long-term success, FragranceNet launched a scorched-earth litigation campaign to take down its main competitor.  Besides filing the instant matter seeking monetary and equitable damages for alleged copyright and trademark infringement, FragranceNet has also filed two state court complaints seeking $20 million in punitive damages for petty claims that are mere mis-delivery of merchandise cases seeking actual damages of less than $15,000.

In this case, FragranceNet has sought just about every piece of information FragranceX has in its possession, including corporate records, financial records, sales records, including invoices, and the identification of FragranceX's customers, suppliers, and drop shipping affiliates.  For example, though the law clearly does not require proof

---

[2] As of July 24, 2009, according to alexa.com, which ranks websites based upon web traffic, 0.00629% of the global internet users visit the website located at www.fragrancenet.com, while 0.00541% of the global internet users visit the website located at www.fragrancex.com.  In the last three months, traffic to the website located at www.fragrancex.com has jumped 18% while the website located at www.fragrancenet.com has only gained 4%.

at this level of detail, FragranceNet has repeatedly demanded that FragranceX produce individual receipts for every transaction FragranceX has conducted since 2003 or earlier. In response to FragranceNet's discovery demands, FragranceX has provided more than twenty-five thousand pages of this highly proprietary and sensitive information – much of which would give FragranceNet an enormous strategic advantage if it falls into the hands of FragranceNet's corporate officers, shareholders or employees and cause FragranceX to suffer irreparable competitive harm.  *See* Declaration of Ron Yakuel sworn to on July 22, 2009 and attached hereto as **Exhibit "B"** ("Yakuel Decl."), ¶¶5 and 8.

Recognizing the value and sensitivity of the information exchanged between the two competitors, on May 30, 2007 the parties entered into a "Stipulation and Order Governing the Production of Documents and Information" prohibiting certain confidential documents from being disclosed to third-parties or even to the parties themselves, depending on the level of confidentiality assigned to each document.  The most sensitive information was to be marked "Confidential Information Attorneys' Eyes Only".  *See* **Exhibit "A"**, Confidentiality Agreement.

With respect to this highly sensitive information, the Confidentiality Agreement provided, in part, that such information can only be disclosed to "attorneys of record and in-house attorneys for the parties in this Action…" and ***"shall not be disclosed to any other persons other than the persons specified…"***  *See* **Exhibit "A"**, Confidentiality Agreement, §§6 and 7.  (Emphasis Added)

Now, FragranceNet seeks to unilaterally expand the bounds of the Confidentiality Agreement by allowing Dennis Apfel, who not only acts as FragranceNet's CEO, but also as its Chairman of its Board of Directors and Chief Financial Officer, to view

discovery designated as "Attorneys' Eyes Only".[3]  Notably, the Employment Agreement does not mention any legal role or position for Mr. Apfel at FragranceNet such as General Counsel or in-house counsel.

It was only after executing the Confidentiality Agreement that FragranceNet began to hold Mr. Apfel out as its "in-house" attorney or one of its counsel (in addition to his responsibilities enumerated above).  Once counsel for Defendant became aware of this situation and the obvious problem with the Confidentiality Agreement, it was brought to the attention of the Court as reflected in this Court's November 6, 2008 Civil Conference Minute Order.  *See* Docket Entry 66.  In the Court's November 6, 2008 Civil Conference Minute Order, the Court held that "Defendant is not seeking to have the Confidentiality Order modified, but rather is concerned about the specific in-house counsel at issue here, namely, ***Mr. Apfel who is one of Plaintiff's counsel***…".  (Emphasis Added)  However, as will be described below, this new designation creates an inevitable conflict, requiring Mr. Apfel be prohibited from viewing discovery labeled "Attorneys' Eyes Only".

---

[3] On September 30, 2003, FragranceNet.com, which was then a public company, filed a 10QSB disclosure with the Securities and Exchange Commission.  Attached to the 10QSB was an employment agreement between FragranceNet and Dennis Apfel (the "Employment Agreement"), which provided, among other things, that Dennis Apfel "shall serve as Chairman of the Board of Directors, Chief Executive Officer and Chief Financial Officer" of FragranceNet.  *See* §2 of the Employment Agreement, which is attached to the Morris Decl. as **Exhibit "C"**.  Moreover, the employment agreement tied Mr. Apfel's salary to the performance of FragranceNet.  Besides receiving a $175,000 base salary, Mr. Apfel received incentive payments if FragranceNet exceeded its target sales; a built-in incentive to learn anything he can about one of his closest competitors and undermine it.

## ARGUMENT

## FragranceX's Motion for a Protective Order Should Be Granted

In light of the facts and circumstances herein, the Court should grant FragranceX's motion for a protective order prohibiting Dennis Apfel, FragranceNet's CEO, or any other persons other than counsel of record in this case, from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Attorneys' Eyes Only" or the like.

"Fed.R.Civ.P. 26(c) permits a district court to 'make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' upon a showing by a movant for the order of good cause." *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) *citing* Fed.R.Civ.Pro. Rule 26(c). Protective orders can include "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed.R.Civ.Pro. Rule 26(c)(1)(G).

Here, FragranceX has established good cause for a protective order prohibiting Dennis T. Apfel, Esq., CEO, CFO and Chairman of the Board of Plaintiff, FragranceNet and any other persons other than counsel of record in this case, from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Attorneys' Eyes Only" or the like because (1) the Confidentiality Agreement prohibits the disclosure of "Attorneys' Eyes Only" information to Dennis Apfel by virtue of his positions as FragranceNet's CEO, CFO and Chairman of the its Board of Directors; and (2) even absent express language prohibiting disclosure of "Attorneys Eyes Only" information to Dennis Apfel, FragranceX is entitled to keep

highly sensitive trade secrets and confidential information from being viewed by its competitor's CEO. [4]

A.    THE CONFIDENTIALITY AGREEMENT PROHIBITS DENNIS APFEL
      FROM VIEWING DOCUMENTS DESIGNATED "ATTORNEYS' EYES ONLY"

Simply stated, the plain language of the Confidentiality Agreement prohibits anyone acting as Chief Executive Officer, Chief Financial Officer or Chairman of the Board of Directors from viewing discovery designated as "Attorneys' Eyes Only."[5]  On numerous occasions, Dennis Apfel has held himself out to the Court as FragranceNet's CEO.  *See e.g.*, **Exhibits "D" and "E"**, Declarations of Dennis Apfel, dated May 29, 2007 and June 18, 2009 (submitted in support of Plaintiff's motions for Leave to File a Third Amended Complaint) and Civil Conference Minute Order dated November 11, 2006 (Docket Entry No. 66), ¶3.  Moreover, in SEC filings, Dennis Apfel disclosed that he also acted as FragranceNet's CFO and Chairman of the Board.  *See* **Exhibit "C"**.  Thus, by virtue of his positions as CEO, CFO and Chairman of the Board of Directors, the Confidentiality Agreement prohibits Dennis Apfel from viewing discovery designated as "Attorneys' Eyes Only".

Because the Confidentiality Agreement clearly prohibits Mr. Apfel from viewing documents labeled "Attorneys' Eyes Only", FragranceNet attempts to allow him to view the information anyway by giving him yet another previously undisclosed title; that of in-house counsel.  Yet, even assuming, *arguendo*, Mr. Apfel served as in-house counsel in

---

[4] To the extent this requires modification to the Confidentiality Agreement, FragranceX merely needs to establish good cause for this modification. *Pall Corp. v. Entegris, Inc.*, 2008 WL 5049961 at *6 (E.D.N.Y., 2008) *citing Hochstein v. Microsoft Corp.*, 2008 WL 4387594 at *2 (E.D.Mich., 2008).  As demonstrated, *infra* and *supra*, FragranceX has met this burden.

[5] As mentioned *supra*, the Confidentiality Agreement provides that discovery labeled "Attorneys' Eyes Only" can only be disclosed to "attorneys of record and in-house attorneys for the parties in this Action…" and "shall not be disclosed to any other persons other than the persons specified…"  *See* **Exhibit "A"**, Confidentiality Agreement, §§6 and 7.

addition to fulfilling his duties as CEO, CFO and Chairman of the Board of Directors, the plain language of the Confidentiality Agreement, which forbids officers of the parties from viewing information labeled "Attorneys Eyes Only", prohibits Mr. Apfel from viewing such information.  Therefore, his supposed role as in-house counsel is of no moment and Mr. Apfel must be prohibited from viewing all discovery designated as "Attorneys' Eyes Only."[6]

**B.    EVEN IF THE CONFIDENTIALITY AGREEMENT DOES NOT PROHIBIT DENNIS APFEL FROM VIEWING "ATTORNEYS' EYES ONLY" DISCOVERY, FRAGRANCEX IS ENTITLED TO A PROTECTIVE ORDER TO PROHIBIT SUCH DISCLOSURE**

"Protective orders limiting access to highly confidential information to counsel and experts 'are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information.'" *Vesta Corset Co., Inc. v. Carmen Foundations, Inc*., 1999 WL 13257, at *3 (S.D.N.Y. Jan 13, 1999).  *See also In re Zyprexa Injunction*, 474 F.Supp.2d 385 (E.D.N.Y., 2007) ("documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 143-144 (S.D.N.Y. 1997) ("whether [a trade secret] merits protection in any particular case depends upon: '(1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the

---

[6] At the November 6, 2008 conference, the reason Plaintiff sought to allow Dennis Apfel to view documents labeled "Attorneys' Eyes Only" was because Defendant had allegedly labeled an "overbreadth" of documents as "Attorneys Eyes Only."  *See* Civil Conference Minute Order dated November 11, 2006 (Docket No. 66), ¶3.  However, Plaintiff never sought to confer with Defendant about downgrading the designation of some of the documents or in any way move to change the designation of "Attorneys' Eyes Only" discovery.  As specified in the Confidentiality Agreement, this would be the proper procedure to address an alleged improper designation rather than allowing a party to view <u>all</u> documents labeled "Attorneys' Eyes Only" regardless of whether they were properly designated or not.  *See* **Exhibit "A"**, Confidentiality Agreement, §12.

measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors'"); *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*, 236 F.R.D. 129 (E.D.N.Y. 2006) ("[i]n determining whether information warrants protection as a Rule 27(c)(7) [sic] trade secret, courts have considered the following: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the measures taken to guard the information's secrecy; (4) the value of the information to the business or to its competitors; (5) the amount of time, money, and effort expended in development of the information; and (6) the ease or difficulty or duplicating or properly acquiring the information") *citing Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 110 (S.D.N.Y.1997).[7]

Here, as described in the Yakuel Decl., the online marketplace in which FragranceX and FragranceNet compete is characterized by intense competition to sell the same commodities for lower prices and ship them less expensively and more efficiently than their competition while maintaining razor thin profit margins. Among other reasons, market entrants fail or succeed based upon their internal processes, procedures, and systems as well as the relationships with the suppliers and partners with whom they do business. Moreover, most, if not all, competitors in this marketplace treat information about these elements of their business as proprietary and highly-confidential, because disclosure to a competitor such as FragranceNet likely would cause irreparable competitive harm. *See* **Exhibit "B",** Yakuel Decl. ¶4.

---

[7] Though Defendant is not seeking such relief here, courts have also routinely granted protective orders preventing the disclosure of trade secrets at all - even to opposing counsel. *See Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.,* 236 F.R.D. 129 (E.D.N.Y. 2006) (court can prevent disclosure of trade secret).

In this case, the information labeled as "Attorneys' Eyes Only" includes, but is not limited to, information about FragranceX's:

- drop shippers;[8]

- shipping processes;

- product suppliers; and

- marketing affiliates.

*See* **Exhibit "B"**, Yakuel Decl., ¶6.

This information is not generally known outside of FragranceX (aside from the third-parties themselves) and even within FragranceX, this information is shared only with employees on a need to know basis with Mr. Yakuel's explicit approval. *See* **Exhibit "B"**, Yakuel Decl., ¶7. If FragranceNet learned of this information, it would cause FragranceX irreparable competitive harm. *Id.*

As testified to by Mr. Yakuel in his declaration (*see* **Exhibit "B"**, Yakuel Decl., ¶9) the ways which FragranceX would suffer irreparable competitive harm includes, but is not limited to, the following scenarios:

a. *Plaintiff has sought information about FragranceX's drop shippers.* As testified by Mr. Yakuel, "[d]rop shippers are enterprises which ship products directly to a retailer's customers instead of from the retailers themselves. Drop shippers represent links in not only the fulfillment chain but in the marketing chain, and thus represent some of an online retailer's best and most frequent customers. Providing information about FragranceX's drop shippers is tantamount to giving away FragranceX's customer list. If FragranceNet were able to learn details about FragranceX's drop shippers, it could approach them, *en masse*, and seek to undercut FragranceX's arrangements and/or exert its market power to affect the drop shippers' relationship with FragranceX."

b. *FragranceNet has sought information about FragranceX's shipping processes.* As testified by Mr. Yakuel, "[f]or an online retailer, the

---

[8] Drop shippers are manufacturers or wholesalers who ship products directly to a retailer's customers instead of from the retailers themselves.

shipping process is one of the most critical elements to competitive success. This element literally makes or breaks many online retailers. If FragranceNet were able to learn the details of FragranceX's shipping processes, it could not only replicate them to its advantage but could use this newly-gained intelligence to better compete with FragranceX."

c.  *FragranceNet has sought information about FragranceX's marketing affiliates.* As testified by Mr. Yakuel, "[f]or an online retailer marketing affiliates allow a company to expand its reach and present its product offerings to more consumers in targeted ways. In short, a company's affiliate program comprises one of the most valuable elements of its marketing program. If FragranceNet were to learn the details about FragranceX's affiliates, it could not only gain a wealth of intelligence about FragranceX's marketing strategies – which are critical competitive elements – but it could also use its market power to undermine FragranceX's arrangements and relationships with its affiliates.

d.  *FragranceNet has obtained information about FragranceX's suppliers.* As testified by Mr. Yakuel, "[f]or any retailer, but especially an online retailer with thin margins, pricing arrangements with suppliers make a difference between profit and loss.  These details about the supplier/retailer relationship are kept extremely confidential, from the point of view of both the supplier and the retailer. If FragranceNet were to learn the identities of and arrangements with FragranceX's suppliers, it would gain competitive intelligence that would allow it to better compete with FragranceX.[9]

In fact, even FragranceNet recognizes the proprietary nature of the trade secrets necessary to run an internet based perfumery retailer, as Mr. Apfel's own Employment Agreement contains a confidentiality clause which prevents him from disclosing a wide swath of information he learns during the course of his employment with FragranceNet. *See* §8 of the Employment Agreement annexed to the Morris Decl. as **Exhibit "C"**.

Similarly, FragranceNet's own Annual Reports filed with the Securities and Exchange Commission recognize the proprietary nature of its business and, more specifically, the information FragranceNet seeks from FragranceX. For instance, in its

---

[9] These examples are for illustrative purposes only. There are other identified and yet to be identified categories of discovery which are and would be properly designated as "Attorneys' Eyes Only".

2003 Annual Report (Form 10KSB; hereinafter the "2003 Annual Report"), a copy of which is annexed to the Morris Decl. as **Exhibit "F"**, FragranceNet states:

- It has over 85 suppliers and "that allows for availability of over 6,000 items on a daily basis and, due to the many sources of merchandise, contributes to the high gross profit percentage FragranceNet enjoys. *See* **Exhibit "F"**, 2003 Annual Report. FragranceX has provided supplier information (*see* **Exhibit "B"**, Yakuel Decl. ¶9) and as noted in Plaintiff's own 2003 Annual Report and Mr. Yakuel's testimony, the ability to keep said information from its closest competitor is critical to the continued success of each company.

- A risk factor related to FragranceNet's viability is its competition, and its competition's ability "to secure products from vendors on more favorable terms, fulfill customer orders more efficiently and adopt more aggressive pricing or inventory availability policies than we can." *See* **Exhibit "F"**, 2003 Annual Report. Thus, if FragranceNet learns of FragranceX's purchases from manufacturers and suppliers, it can adopt FragranceX's pricing and inventory strategy and undercut it; something noted by FragranceNet as a risk factor in its own business. *Compare* **Exhibit "F"**, 2003 Annual Report *and* **Exhibit "B"**, Yakuel Decl. ¶9.

- A benefit of its online business over traditional retailers is that it can obtain important "demographic and behavioral data about its customers, increasing opportunities for direct marketing." *See* **Exhibit "F"**, 2003 Annual Report. FragranceX has provided detailed information regarding its own customers. As noted, should FragranceNet obtain information about FragranceX's customers, it would be able to identify them, profile them and market to them directly.

Obviously such information is extremely valuable to anyone employed at FragranceNet, let alone its CEO, CFO and Chairman of the Board - no matter whether this person also identifies himself as in-house counsel. In fact, Mr. Apfel, who helped to found FragranceNet and is intimately involved in its day-to-day affairs, is precisely the type of individual who the Confidentiality Agreement (and agreements like it) was meant to prevent from viewing proprietary information only attorneys should see.

By allowing Mr. Apfel to view discovery labeled "Attorneys' Eyes Only", that protection afforded by the Confidentiality Agreement (and decisional law) would be

rendered meaningless and worthless and would not only seriously compromise FragranceX's business, but cause FragranceX irreparable competitive harm. *See* **Exhibit "B"**, Yakuel Decl., ¶4. In fact, FragranceNet's untenable position is tantamount to allowing Kenneth I. Chenault, an attorney and CEO of American Express, to see discovery labeled "Attorneys' Eyes Only" in a lawsuit with MasterCard, its closest competitor and then use it internally.[10]

Even with the indisputable evidence that both parties treat the information sought in discovery as highly proprietary, FragranceNet nevertheless continues to insist that its CEO view discovery designated "Attorneys' Eyes Only". As a practical matter, while FragranceX continues to search for and provide responses to Plaintiff's discovery demands on an ongoing basis (especially in light of the newly added trademark claims) in accordance with the Federal Rules of Civil Procedure, FragranceNet's continued untenable position regarding this issue will have the effect of impeding discovery, as FragranceX cannot hand over its most closely held trade secrets to its closest competitor's upper management and cause its own business, which was built up after years of work and considerable investment, to suffer irreparable harm. *See* **Exhibit "B"**, Yakuel Decl., ¶¶4-5.

In light of the irreparable competitive harm that FragranceX would suffer from disclosure of "Attorneys' Eyes Only" information to FragranceNet's CEO, counsel for FragranceNet had previously assured counsel for FragranceX that it would not seek to disclose "Attorneys' Eyes Only" information to Mr. Apfel without sufficient notice to allow Defendant to make an application to the Court to prevent such a disclosure.

---

[10] There are numerous other Fortune 500 corporations (as well as a myriad of smaller private corporations including the Plaintiff here) in which the CEOs are also attorneys such as Time Warner and Viacom.

However, at the first opportunity to provide sufficient notice to allow Defendant to apply to the Court for a protective order, Plaintiff's counsel failed to do so.  Specifically, Plaintiff's counsel did not notify Defendant's counsel of its intention to have FragranceNet's CEO, Dennis Apfel present for the entirety of Mr. Yakuel's deposition, including the portions of the deposition determined to be "Attorneys' Eyes Only" by Defendant, until the eve the deposition.  Plaintiff's counsel then stated he was unwilling to proceed with Mr. Yakuel's deposition unless Mr. Apfel was permitted to be present for the entire deposition.  This notice was clearly not sufficient and occurred only after Defendant had incurred the expense of arranging travel and overnight accommodation for its counsel.  Accordingly, Plaintiff's assurances regarding its intentions with respect to "Attorneys' Eyes Only" information do not provide appropriate protection for this sensitive and highly confidential information.

Because of the risk of disclosure of trade secrets and the inherent conflict with one individual holding dual roles, courts routinely forbid individuals deemed to be "in-house counsel" from viewing certain information exchanged in discovery if they play a decision-making role within the company.  The decision whether to restrict in-house counsel from viewing protected information "turns largely on the specific role of in-house counsel within the business: whether he or she has a part in the type of competitive decision-making that would involve the potential use of the confidential information." *Sullivan Marketing, Inc. v. Valassis Communications, Inc.*, 1994 WL 177795 (S.D.N.Y., May 5, 2004).  *See also U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed.Cir.1984)*, Matsushita Elec. Indus. Co. v. United States,* 929 F.2d 1577, 1579 (Fed.Cir.1991) and *Norbrook Laboratories Ltd. v. G.C. Hanford Manufacturing Co.,* 2003 WL 1956214

14

(N.D.N.Y., 2003) where, in applying *U.S. Steel and Matsushita Elec. Indus.*, Senior Judge Munson held that dual roles:

> create a serious risk of the inadvertent disclosure of confidential documents and information. While Mr. Heath may not directly participate in competitive decisionmaking-product design, marketing strategy, scientific research, etc.-as a member of the Board of Directors, he sits in the same room as those who are involved in competitive decisionmaking. As such, Hanford's board meetings present an unacceptable opportunity for the inadvertent disclosure of confidential information. While the court does not doubt Mr. Heath's assurances that he will abide by the protective order, it cannot endorse a situation that places Mr. Heath's ethical obligations as an attorney in direct competition with his fiduciary duty to Hanford.

The D.C. Circuit similarly held that compartmentalization of in-house counsel who has other decision making roles within a company is "difficult" enough to warrant a protective order prohibiting them from viewing sensitive information exchanged in a matter.  "[W]e are unable to find any abuse of discretion in the District Court's refusal to allow these two members of Exxon's in-house legal department access to competitively sensitive Drives Group information. As argued by the FTC, it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. 1980).  *See also Meridian Enterprises Corp. v. Bank of America Corp.,* 2008 WL 474326 (E.D. Mo. 2008) and *Rates Technology Inc. v. Mediatrix Telcom, Inc.*, 2007 WL 2581776 (E.D.N.Y. 2007; Magistrate Judge Tomlinson) *citing Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y.2006) ("it seems unreasonable to expect that anyone working to further his own scientific and

technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests").

Here, Dennis Apfel serves as CEO, CFO and Chairman of the Board of Directors of the Plaintiff and has now also been deemed to be in-house counsel by the Plaintiff.[11] His roles as CEO, CFO and Chairman of the Board in a relatively small private business not only puts him in the middle of every important decision FragranceNet makes, but requires him to approve such decisions made by others. Thus, his role as in-house counsel creates an inevitable conflict: if he discloses the information or uses it to gain a competitive advantage, he would possibly be in violation of the Confidentiality Agreement and cause irreparable harm to the Defendant, but if he fails to utilize the information, he could be in breach of his fiduciary duties to the Plaintiff as its CEO, CFO or Chairman of its Board of Directors absent further directives from this Court.[12]

If Mr. Apfel's four different roles with FragranceNet were not enough, two of his sons, Eric Apfel and Jason Apfel, also serve pivotal roles within FragranceNet.[13] Even if Dennis Apfel was not the CEO, CFO and Chairman of the Board of Directors of

---

[11] It appears that this designation did not occur (or, at the very least, was not revealed) until after the Confidentiality Agreement was executed by counsel allowing "in-house" counsel to view documents labeled "Attorneys' Eyes Only".

[12] A corporate officer's fiduciary obligation to his company has been litigated *ad nauseum* in New York. A corporate officer has a fiduciary duty to the corporation, including an obligation of candor. *See Alpert v. 28 Williams Street Corp.*, 63 N.Y.2d 557, 569, 473 N.E.2d 19 (1984) *citing Globe Woolen Co. v. Utica Gas & Elec. Co.*, 224 N.Y. 483, 490, 121 N.E. 378 (1918). This obligation of candor "strictly obligat[es] a fiduciary 'to make full disclosure of any and all material facts within his or her knowledge relating to a contemplated transaction [such as selling or buying shares] with the other party to the relationship.'" *Ajettix Inc. v. Raub*, 9 Misc.3d 908, 913, 804 N.Y.S.2d 580, 588 (New York County 2005) *citing Blue Chip Emerald LLC v. Allied Partners Inc.,* 299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dep't 2002). Thus, if Dennis Apfel comes across any highly sensitive information (labeled "Attorneys' Eyes Only") about one of FragranceNet's largest competitors (FragranceX) during the course of this litigation, he would be obligated to disclose it to the rest of the corporate officers and/or shareholders or even potential shareholders.

[13] According to employment agreements filed with the Securities and Exchange Commission, which are annexed to the Morris Decl. as **Exhibit "G"**, Eric Apfel served as Vice President, Secretary and a Director and Jason Apfel served as President, Chief Operating Officer and a Director.

FragranceNet and merely its in-house counsel, courts have held that this close relationship between an in-house lawyer and corporate officers justifies prohibiting an in-house lawyer from viewing confidential documents disclosed by a competitor.  *See*, *e.g.* *A. Hirsh, Inc. v. U.S.*, 11 C.I.T. 208, 215, 657 F.Supp. 1297, 1303-1304.  In *A. Hirsh, Inc.,* the Court of International Trade held that:

> although perhaps not directly "involved in the competitive decision-making of the company", Mr. Hirsh until recently was empowered with the authority to act as its president under certain limited circumstances.  He continues to serve as an officer of the plaintiff.  These facts, in addition to his familial ties to plaintiff's operating officers, suggest a lack of isolation of Mr. Hirsh from the commercial activities of the company, thus creating an "unacceptable opportunity for inadvertent disclosure."  *U.S. Steel Corporation v. United States*, 730 F.2d at 1468. *Cf.  Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d at 1483-84.  ***Particularly in a small corporation where insulation of one department from another is insignificant, if it exists at all, there remains a justified concern that disclosure to Mr. Hirsh would place him "under the unnatural and unremitting strain of having to exercise constant self-censorship in [his] normal working relations.***" *Atlantic Sugar, Ltd. v. United States*, 85 Cust.Ct. 133, 133-34 (1980). (Emphasis Added)

Thus, Mr. Apfel must be prohibited from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Attorneys' Eyes Only" or the like and the Court should modify the Confidentiality Agreement to prohibit anyone other than counsel of record in this case, from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Attorneys' Eyes Only" or the like.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendant FragranceX respectfully requests that this Court issue a protective order pursuant to Fed.R.Civ.Pro. Rule 26(c) prohibiting Dennis T. Apfel, Esq., CEO, CFO and Chairman of the Board of Plaintiff, FragranceNet and any other persons other than counsel of record in this case, from in any way, receiving and/or viewing documents and any other information marked or designated by FragranceX as "Attorneys' Eyes Only" or the like.

Dated: Glen Allen, VA
       July 24, 2009

**Respectfully submitted,**

<u>/s/ John W. Dozier, Jr., Esq.</u>
John W. Dozier, Jr., Esq. (admitted *pro hac vice*)
Dozier Internet Law, P.C.
11520 Nuckols Road / Suite 101
Glen Allen, VA  23059
Tel:    (804) 346-9770
Fax:   (804) 346-0800

*Counsel for Defendant,*
*FragranceX.com, Inc.*