UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-2225 (JFB)(AKT)
_____

FRAGRANCENET.COM, INC.,

Plaintiff,

VERSUS

FRAGRANCEX.COM, INC.,

Defendant.

_____

**MEMORANDUM AND ORDER**
January 14, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff FragranceNet.com, Inc. (hereinafter "plaintiff" or "FragranceNet") brings this action against defendant FragranceX.com, Inc. (hereinafter "defendant" or "FragranceX") alleging that defendant's use of plaintiff's photographs and trademarks constitutes copyright infringement, trademark infringement, trademark dilution, violation of New York General Business Law § 133, state law dilution, injury to business reputation, common law unfair competition and misappropriation, passing off, and unjust enrichment.

Presently before the Court is defendant's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendant contends (1) that FragranceNet cannot bring a claim for copyright infringement against defendant because the photographic images of products on FragranceNet's website are not entitled to copyright protection, and (2) FragranceNet cannot bring trademark-related claims against defendant because FragranceNet does not have enforceable rights to the trademarks "FRAGRANCENET" and "FRAGRANCENET.COM." For the reasons set forth below, the Court concludes that plaintiff has asserted plausible claims under the copyright and trademark laws that survive a motion to dismiss. Accordingly, defendant's motion is denied in its entirety.

I. BACKGROUND

A. Facts

For purposes of this motion to dismiss, the Court has taken the facts described below from the plaintiff's third amended complaint ("Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiffs, the non-moving parties. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff FragranceNet is a Delaware corporation with its principal place of business in Hauppauge, New York. (Compl. ¶ 6.) Since January 1997, plaintiff has owned and operated an online retail store that sells perfume and related products at www.fragrancenet.com. (*Id.* ¶¶ 2, 11.) Defendant FragranceX is a New York corporation with its principal place of business in Long Island City, New York. (*Id.* ¶ 7.) Defendant sells perfume online at its website, www.fragrancex.com. (*Id.* ¶ 16.) The instant action arises out of defendant's alleged misappropriation and use of more than nine- hundred copyrighted images from plaintiff's website and defendant's alleged use of plaintiff's trademarks in defendant's website's metatags and in connection with Google's AdWords program. (*Id.* ¶ 2.) Plaintiff seeks preliminary and permanent injunctive relief, as well as compensatory and punitive damages based on defendant's actions. (*Id.* ¶ 4.)

According to the complaint, plaintiff has created hundreds of images of the products that it offers for sale, which are displayed on its website so that consumers can see visual images of the products. (*Id.* ¶¶ 12, 13.) The "background, arrangement, lighting, use of shadow, angle, and selection of products within each line to be included within the images are among the original elements contributing to the [i]mages." (*Id.*) FragranceNet owns and has owned the copyrights to these images at all relevant times. (*Id.* ¶¶ 14-15.) The complaint alleges that defendant copied more than nine hundred of these copyrighted images from FragranceNet's website, and posted them on its own website. (*Id.* ¶ 16.) Plaintiff attaches to its complaint screenshots depicting its own images side-by-side with copies of defendant's allegedly infringing images. (Compl. Ex. B.) According to the complaint, FragranceNet informed defendant that defendant's actions were infringing FragranceNet's copyrights, and FragranceNet sent several cease-and-desist letters to defendant, but defendant did not discontinue its use of the images. (Compl. ¶¶ 17, 18.) Accordingly, plaintiff's complaint contains a cause of action for copyright infringement.

Plaintiff also owns the registrations for the trademarks FRAGRANCENET and FRAGRANCENET.COM, and plaintiff has used those marks in connection with its sale and marketing of perfume and related products online since January 27, 1997. (*Id.* ¶¶ 31, 34.) The marks were first registered by Telescents, Inc., a subsidiary of FragranceNet. These marks were assigned to plaintiff on May 28, 2009. (Def.'s Brief Ex. H.) The assignment included the "right to commence an action for past or future infringements." (*Id.*)

The complaint alleges that plaintiff has marketed and promoted its services under these marks in national magazines, newspaper inserts, direct mailings, and other advertising venues. (Compl. ¶¶ 32, 35.) Plaintiff has sold

millions of dollars of merchandise through its website, which accepts orders directly from customers. (*Id.* ¶ 33.) Over the past twelve years of operation, plaintiff has established a reputation for high-quality retail sales and customer services under its marks. (*Id.* ¶ 37.) There is customer recognition of these marks, and the marks have acquired a substantial level of goodwill. (*Id.*)

The complaint alleges that defendant inserted plaintiff's trademarks, "FRAGRANCENET" and "FRAGRANCENET.COM" into the metatags on defendant's website. (*Id.* ¶ 21.) This action causes defendant's website to appear as a search result when a user searches plaintiff's trademarks in an internet search engine. (*Id.*) The complaint also alleges that defendant has bid on, purchased, and used certain keywords, including plaintiff's trademarks, in Google's AdWords program, with the knowledge that doing so would result in defendant's links appearing as "Sponsored Links" when a consumer types "FRAGRANCENET," "FRAGRANCENET.COM," or other variations of FragranceNet's mark into an internet keyword search on Google. (*Id.* ¶ 22.) The AdWords Program by Google allows advertisers to bid on particular keywords that apply to their websites. (*Id.*) Advertisers may specify whether keywords should be applied as a "broad match," "phrase match," "exact match," or "negative match." When an advertiser bids on a "broad match," its link will appear when a search is conducted for that keyword, any of its plural forms, synonyms, or phrases similar to the word. (*Id.* ¶ 24.) When an advertiser bids on a "phrase match," its link will appear when a user searches for a particular phrase, even if that phrase is used in combination with other words. (*Id.* ¶ 25.) An "exact match" will display the advertiser's link only when the exact phrase bid on is searched on Google. (*Id.* ¶ 26.) A "negative match" bid allows an advertiser to ensure that its link does not appear when certain terms are searched. (*Id.* ¶ 27.) Sponsored Links appear on the top and right side of the search results screen. (*Id.* ¶ 22.)

According to the complaint, defendant bid on certain keywords, including plaintiff's trademarks, to cause its links to appear as "Sponsored Links" on Google when a search for "FRAGRANCENET" or other variations of plaintiff's mark are performed. (*Id.* ¶¶ 22, 28.) As a result, defendant's links appear on the top and right side of the search results screen when searches for plaintiff's trademarks are performed. (*Id.*)

The complaint alleges that plaintiff demanded that defendant discontinue all further use of its marks and asked that defendant bid on plaintiff's mark as a "negative match" to prevent defendant's links from appearing as results when plaintiff's marks were searched on Google. (*Id.* ¶ 29.) According to the complaint, defendant knew that its use of plaintiff's trademarks in the AdWords program would result in consumers being "misdirected" to defendant's website instead of plaintiff's website, but defendant continued to use plaintiff's trademarks without permission. (*Id.* ¶ 39.) The complaint further alleges that defendant reasonably expected to receive revenue from interstate or international commerce from this use of plaintiff's trademarks. (*Id.* ¶ 40.) The complaint claims that this practice has caused confusion among consumers and has deprived FragranceNet of opportunities to expand its goodwill; the complaint alleges that plaintiff has suffered irreparable harm as a result of defendant's use of its trademarks. (*Id.* ¶¶ 41-46.)

3

B. Procedural History

On July 31, 2009, plaintiff filed its third amended complaint against defendant in this action. By letter dated August 11, 2009, defendant indicated its intention to move for dismissal of the complaint for failure to state a cause of action upon which relief can be granted. A pre-motion conference was held on August 20, 2009. On September 21, 2009, defendant filed its motion. Plaintiff filed opposition papers on October 21, 2009, and defendant filed its reply on November 9, 2009. Oral argument was heard on December 11, 2009. Defendant submitted a supplemental letter brief on December 23, 2009. Plaintiff responded on January 11, 2010. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F.

Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim"); *Brodeur v. City of New York*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-*10, 2005 WL 1139908 (E.D.N.Y. 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

#### A. Copyright Infringement

Defendant argues that the claim for copyright infringement in plaintiff's third amended complaint should be dismissed on two grounds: (1) the images at issue do not possess the requisite level of originality to be copyrightable as a matter of law; and (2) the images at issue are nothing but photographs of third-parties' intellectual property without any additional creative elements and, accordingly, are not copyrightable. The Court addresses each of these arguments in turn.

##### 1. Originality of the Copyrighted Images

Defendant first argues that plaintiff's images do not possess the requisite "creative or expressive elements" required to be copyrightable as a matter of law. Defendant does not argue that plaintiff's pleadings are insufficient on their face; rather, defendant argues that plaintiff does not have a protectable copyright and, therefore, cannot bring the copyright claim alleged in the complaint against defendant in the first place. For the reasons set forth below, the Court is unable to rule on the originality of the copyrighted images at this juncture and finds that plaintiff has adequately stated a plausible claim for copyright infringement that survives a motion to dismiss.

In order to bring a claim for copyright infringement, a plaintiff must establish that (1) plaintiff owns a valid copyright and (2) defendant copied "constituent elements of the work that are original." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 545 (S.D.N.Y. 2001). Defendant contends that plaintiff does not own a valid copyright, as required by the first element of copyright infringement.

In order to receive protection under the copyright laws, a work must be original. *Boisson*, 273 F.3d at 268; *see SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 309 (S.D.N.Y. 2000) ("The Supreme Court in *Feist* made clear that the originality requirement is constitutional, and that no work is *per se* protectible."). The entirety of a work need not be original to obtain copyright protection, but copyright protection will extend only to those elements of the work that are original. *Feist Publ'ns*, 499 U.S. at 348-49, 353. The originality requirement does not demand that the work for which copyright protection is sought be either novel or unique; rather, originality requires "a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words,

'the fruits of [the author's] intellectual labor.'" *Boisson*, 273 F.3d at 268 (quoting and citing *In re Trade-Mark Cases*, 100 U.S. 82, 94 (1879)); *see also Feist*, 499 U.S. at 346 ("Originality does not signify novelty; a work may be original even though it closely resembles other works . . . ."); *id.* at 348 ("[C]hoices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws."). The threshold requirement for originality is "modest." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250 (1903) ("Personality always contains something unique. It expresses its singularity even in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone."); *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005) ("It is well established that the originality requirement for obtaining a copyright is an extremely low threshold, unlike the novelty requirement for securing a patent. Sufficient originality for copyright purposes amounts to little more than a prohibition of actual copying." (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988))). The Supreme Court has stated:

> To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable."

*Feist*, 499 U.S. at 345-46 (internal quotations and citations omitted).

The Copyright Act extends copyright protection to pictorial and graphic works. 17 U.S.C. § 102(a)(5). Accordingly, pictorial and graphic works may be copyrighted as long as they possess the requisite originality for copyrightable works. "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Rogers' inventive efforts in posing the group for the photograph, taking the picture, and printing 'Puppies' suffices to meet the original work of art criteria."); *see SHL Imaging*, 117 F. Supp. 2d at 310 ("The technical aspects of photography imbue the medium with almost limitless creative potential. For instance, the selection of a camera format governs the film size and ultimately the clarity of the negative. Lenses affect the perspective. Film can produce an array of visual effects. Selection of a fast shutter speed freezes motion while a slow speed blurs it. Filters alter color, brightness, focus and reflection. Even the strength of the developing solution can alter the grain of the negative."); *see also Kaplan v. Stock Market Photo Agency*, 133 F. Supp. 2d 317, 323 (S.D.N.Y. 2001).

The Copyright Act provides that a "certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the

copyright." 17 U.S.C. § 410(c).[1] Accordingly, a registered copyright for an image serves as prima facie evidence of both the validity of the copyright and the originality of the work. *Boisson*, 273 F.3d at 268 (citing *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) ("We also note that on the issue of originality, as compared to the issue of compliance with statutory formalities, it is even clearer that copyright registration created a presumption of validity.")). Because plaintiff registered its images, defendant bears the burden of establishing lack of originality. *See Vargas*, 418 F. Supp. 2d at 372.

Defendant's arguments that plaintiff's copyrighted images lack sufficient originality to be copyrightable are not persuasive at this juncture. First, the copyright registration of each of plaintiff's images affords those images a presumption of originality. To rebut that presumption, defendant must present evidence that clearly demonstrates that plaintiff's images lack originality. However, this determination of whether plaintiff's images are sufficiently original to be copyrighted is a factual issue that is inappropriate for determination on a motion to dismiss given the allegations in this case. *Id.* ("Typically, '[w]hen the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve.'" (quoting *Tin Pan Apple, Inc. v. Miller Brewing Co.*, No. 88 Civ. 4085(CSH), 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994))); *see Kregos v. Assoc. Press*, 937 F.2d 700, 709 (2d Cir. 1991) ("If Kregos prevails at trial on the factual issues of originality and creativity, he will be entitled to protection only against infringement of the protectable features of his form."); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, No. 04 Civ. 2110 (WHP), 2004 WL 1399187, at *2 (S.D.N.Y. June 23, 2004) ("Defendants' argument that the 'Prado' design lacks originality raises factual issues that are best left for trial."). Although courts may resolve this issue as a matter of law in certain circumstances, that determination is generally made on a motion for summary judgment, after the parties have conducted discovery and had the opportunity to submit evidence on the issue. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 298 n.11 (S.D.N.Y. 2002) (noting, on a motion for summary judgment, that "although the question of originality can be a question of fact for the jury, it is not necessarily so. When a work clearly contains sufficient originality to be copyrightable, courts may decide the issue as a matter of law." (citations omitted)).

As discussed above, the requirements for originality are "modest." *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989). Here, the plaintiff has alleged sufficient facts to support its claim for copyright infringement. Plaintiff's complaint alleges that "without [plaintiff's] authorization, [d]efendant copied more than nine hundred (900) copyrighted [i]mages from [plaintiff's] Web site and posted them on the Web site of its competing online fragrance store, www.fragranceX.com." (Compl. ¶ 16.) Plaintiff also alleges that it owns copyright registrations for these images. (Compl. ¶¶ 14-15.) Plaintiff also attached to its complaint screenshots that show its own images side-by-side with defendant's allegedly infringing

---

[1] The second element, actual copying of the plaintiff's work, is not at issue at this stage. Plaintiff alleges that defendant copied the images at issue off plaintiff's website. Defendant does not deny copying the photographs but argues that it may legally copy those images because they do not possess the requisite originality to be copyrightable as a matter of law.

images. (Compl. Ex. B.) Plaintiff has further alleged that its copyrighted images were "independently created" by its photographer, "as opposed to copied from other works." *See Feist*, 499 U.S. at 345.

Although plaintiff submitted a declaration from its photographer regarding the process involved in creating these images, this declaration may not be considered by the Court on a motion to dismiss. *See, e.g.*, *Coggins v. County of Nassau*, No. 07-CV-3624 (JFB)(AKT), 2008 WL 2522501, at *6-7 (E.D.N.Y. June 20, 2008). Nonetheless, in its complaint, plaintiff has alleged that the "background, arrangement, lighting, use of shadow, angle, and selection of products within each line to be included within the images are among the original elements contributing to the [i]mages." (Compl. ¶ 12.) The totality of the photographer's lighting selection, camera angle, lens and filter selection may be sufficient to provide plaintiff's images with the requisite originality for protectable images. *See SHL Imaging*, 117 F. Supp. 2d at 311 ("What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection."); *Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 417-18 (S.D.N.Y. 2000) (when a photographer "personally supervised the lay-out of the items that were photographed, positioned them in what she thought an attractive manner, selected particular angles and lighting, and in some cases even had the images enhanced by a computer to achieve the desired outcome . . . [t]he creative elements asserted [satisfied] the minimal originality requirement for copyright."). These allegations state a plausible claim for copyright infringement and are sufficient to survive a motion to dismiss.

Defendant cites *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542 (S.D.N.Y. 2001) in support of its claim that plaintiff's pictures of perfume bottles lack originality. That case held that pictures of Chinese food dishes taken for a menu lacked sufficient artistic quality to be copyrightable. *Id.* at 546. However, unlike in the instant case, in which the defendant brings its claim based on the pleadings, *Oriental Art* involved a motion to dismiss filed concurrently with a motion for a preliminary injunction; accordingly, the court in *Oriental Art* had an evidentiary record before it in making its determination. *Id.* at 544. Although defendant argues that the court in *Oriental Art* stated that "[i]n rendering the decision on the motion to dismiss, the Court declines to consider the affidavits and exhibits submitted by the parties on the pending motions," *id.* at 550, all portions of defendant's brief that cite to and quote from *Oriental Art* are taken from the portion of the opinion discussing the motion for preliminary injunction. That portion of the opinion cites extensively to affidavits, declarations, and exhibits attached to the parties' moving papers. *Id.* at 546-48. Furthermore, in support of its finding that the photographs did not have the requisite originality required for copyrighted material, the court in *Oriental Art* noted that: "The photographs lack any artistic quality, and neither the nature and content of such photographs, nor plaintiffs' description of their preparation, give the [c]ourt any reason to believe that any 'creative spark' was required to produce them." *Id.* at 546. The court in *Oriental Art* further stated: "plaintiffs fail to describe how the photographs were taken, or how they were incorporated into the copyrighted design as a whole. . . . While [plaintiff's president] states that he worked with a photographer on the 'lighting' and 'angles,' he provides no description of either

the lighting or angles employed, or any desired expression." *Id.* at 547. Thus, the *Oriental Art* court acknowledged that the lighting and angles employed by the photographer are facts to be considered in the determination of an image's originality. As discussed *supra*, these facts are improper for consideration on a motion to dismiss. Another distinction between *Oriental Art* and the instant case is that the plaintiffs in *Oriental Art* did not have registered copyrights in the images at issue but rather held a copyright registration only in the overall design in which the photographs were arranged. *Id.* at 548 ("Plaintiffs did not copyright the photographs themselves, but a 'graphic design' for menus in which they appear, which contains arrangements of dishes, and in some cases, associated artwork. Their copyright registration certificate constitutes prima facie evidence of a valid copyright in such design."). FragranceNet holds registered copyrights for the images at issue here themselves. Thus, the circumstances in *Oriental Art* are clearly distinguishable from the instant case.

Defendant's reliance on *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542 (E.D.N.C. 2008), a case from the Eastern District of North Carolina, is similarly flawed. That case held that photographs of "aftermarket motorcycle taillights with a neutral surface in the background," which were "meant to serve the purely utilitarian purpose of displaying examples of [a] product to potential consumers" were not copyrightable because those images were merely descriptive pictures of a product. *Id.* at 549. However, that non-binding case involved photographs that were not registered. *Id.* Furthermore, *Custom Dynamics* was decided after a motion for a preliminary injunction; accordingly, there was an evidentiary record before that court at the time of the motion.[2] At this stage, however, this Court lacks sufficient evidence to determine the originality of the images at issue as a matter of law and holds that plaintiff has alleged sufficient facts to state a

---

[2] Likewise, in *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258 (10th Cir. 2008), also cited by defendant, the court was ruling on a motion for summary judgment—not a motion to dismiss. *Id.* at 1261. That case also acknowledged that photographs—even photographs of objects—can be copyrightable: "to the extent a photograph reflects the photographer's decisions regarding pose, positioning, background, lighting, shading, and the like, those elements can be said to 'owe their origins' to the photographer, making the photograph copyrightable, at least to that extent." *Id.* at 1264. Accordingly, the cases relied on by defendant consistently acknowledge that the determination of a work's originality is a factual one.

The *Meshworks* court also relies on the reasoning in a Ninth Circuit case, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000). In *Ets-Hokin*, the plaintiff alleged that the defendant had infringed on his commercial photographs of a Skyy-brand vodka bottle. The *Ets-Hokin* court held that although a vodka bottle is usually a utilitarian object that cannot be copyrighted, *id.* at 1080 (citing 17 U.S.C. § 101), plaintiff's photographs of the vodka bottle were copyrightable to the extent the photographer had made specific decisions regarding the "lighting, shading, angle, background, and so forth . . . ." *Id.* at 1077.

FragranceX's citation to another non-binding case, *ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700 (6th Cir. 2005), is similarly inapposite because that case involved a motion for summary judgment. *Id.* at 702-03. Moreover, as discussed further *infra*, that case involved claims relating to the originality of derivative works.

9

claim for copyright infringement.

2. Photographs of Third-Parties' Intellectual Property

Defendant next argues that the images at issue in this case are *per se* not copyrightable as a matter of law because they are mere photographs of third-parties' intellectual property. Defendant argues that photographs of another's intellectual property must "contain some substantial, not merely trivial originality." (Def.'s Brief at 11.) Accordingly, defendant contends that the images on plaintiff's website are "derivative works," works based upon one or more preexisting copyrighted works, *see* 17 U.S.C. § 101, and are subject to a higher standard of originality than original works. Thus, defendant asserts that the images used by plaintiff on its website are not sufficiently original to qualify as derivative works of the original perfume bottles and boxes themselves.[3]

The Copyright Act specifically grants protection to derivative works. 17 U.S.C. § 103(a)–(b). Such protection extends "to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work and does not imply any exclusive right in the preexisting material." *Id.* Thus, to be copyrightable, a derivative work must contain original elements that make the derivative work distinct from its original work. *See id.* This Court is unable to locate any rule of law (and the defendant provides no citations supporting its claim) that photographs of third-parties' intellectual property are *per se* not copyrightable. In fact, based upon a review of the Copyright Act and relevant case authority, this Court rejects defendant's attempt to create such a *per se* rule. Instead, the cases make clear that, with regard to photographs, "a copyright derives from the photographer's original conception of his subject, not the subject itself. Protectable elements may include posing the subjects, lighting, angle, selection of film and camera, [and] evoking the desired expression, along with other variants." *Kaplan*, 133 F. Supp. 2d at 323 (citations and internal quotations omitted); *see also Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005). Indeed,

> [t]he notion that photographs merely reproduce reality, and do not apply a creative, or even distorting, eye to the

---

[3] As a threshold matter, the Court notes that defendant has failed to assert or offer any evidence that the perfume bottles that are the subjects of the images in question are copyrighted. Moreover, the Court notes that courts are split on whether photographs of a copyrighted work are properly considered derivative works. *See Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 627 F. Supp. 2d 123, 135 n.15 (S.D.N.Y. 2008) (comparing *Ets-Hokin*, 225 F.3d at 1077-78 ("But simply because photographs are in this colloquial sense 'derived' from their subject matter, it does not necessarily follow that they are derivative works under copyright law.") with *SHL Imaging*, 117 F. Supp. 2d at 306 ("A photograph of Jeff Koons' 'Puppy' sculpture in Manhattan's Rockefeller Center merely depicts that sculpture; it does not recast, transform, or adapt Koons' sculptural authorship. In short, the authorship of the photographic work is entirely different and separate from the authorship of the sculpture.")). However, it is not necessary to decide whether the images in question are derivative works at this juncture. For the purposes of this opinion, the Court assumes, without deciding, that plaintiff's images are derivative works because, even as derivative works, the claim survives a motion to dismiss.

10

events is long discredited. The photographer selects the image to be reproduced, capturing a particular angle of view, and that image conveys, in the case of plaintiffs' creations, at best a partial, two-dimensional impression of the actual work . . . . Viewfinder has not copied plaintiffs' dresses; it has displayed a particular depiction of them.

*Sarl Louis Feraud Intern. v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 128 (S.D.N.Y. 2008) (quoting *Sarl Louis Feraud Intern. v. Viewfinder Inc.*, 406 F. Supp. 2d 274, 283 (S.D.N.Y. 2005)).

The Court does note, however, that images of a third-party's intellectual property may receive less protection than a completely original work. Such minimal protection would not afford the registrant of the copyright protection against all subsequent depictions of the same subject matter. Rather, the protection is against a precise re-creation or copying of the registrant's work:

> While plaintiff's photographs meet the minimal originality requirements in *Feist*, they are not entitled to broad copyright protection. Plaintiff cannot prevent others from photographing the same frames, or using the same lighting techniques . . . . What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection. In sum, plaintiff is granted copyright protection only for its 'incremental contribution.' Practically, the plaintiff's works are only protected from verbatim copying. However, that is precisely what defendants did.

*SHL Imaging*, 117 F. Supp. 2d at 311 (internal citation omitted). This is known as a "thin copyright."

Defendant further argues that, as derivative works, the images at issue are subject to a higher standard of originality that they are unable to meet as a matter of law. The determination of the originality of a derivative work is a factual question that is inappropriate for determination on a motion to dismiss under the circumstances of this case. *Woods v. Bourne Co.*, 60 F.3d 978, 991 (2d Cir. 1995) ("To determine whether a work is sufficiently original to be a derivative work, the judge in a bench trial must make findings of fact based upon a comparison of two works. The judge must then apply the legal standard of originality to the facts to determine whether the standard has been met. Although this seems at first blush to be a two-step process, with review of the factual findings governed by a clearly erroneous standard and the legal conclusion subject to de novo review, most courts, including this one, apparently view the process as purely a factual inquiry, reviewable for clear error alone."). Each of the cases cited by defendant was decided based on more evidence than the pleadings alone. *See, e.g.*, *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir. 1976) (appeal following district court's grant of a preliminary injunction); *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512 (2d Cir. 1945) (appeal following district court's dismissal of complaint after receiving evidence and testimony); *Woods v. Bourne Co.*, 60 F.3d 978 (2d Cir. 1995) (appeal following a bench trial); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980) (appeal from district court's grant of summary judgment).

The Court must examine each photograph as a whole before determining whether the photograph contains sufficient originality to be copyrightable. Each of the images at issue here was registered by plaintiff; accordingly, the burden is on defendant to rebut the presumption of originality that attaches to each of these images. As discussed above, this finding and weighing of facts is an inappropriate inquiry for the Court to make on a motion to dismiss in this case.[4] "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990). Here, plaintiff asserts that defendant has directly copied its copyrighted images. Even assuming that the images at issue, as pictures of third-parties' intellectual property, contain only a slight quantum of originality, and therefore plaintiff possesses a "thin copyright," *see Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) ("Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying because the majority of the work is unprotectable."); *see also Masterson Mktg., Inc. v. Lotus Int'l, Inc.*, Civ. A. No. 04-2133, 2008 WL 667412, at *7 (S.D. Cal. Mar. 7, 2008) ("[W]hen similarity is inevitable (as is the case when two photographs depict the same bottle), the copyright holder is left with a 'thin copyright,' which protects against only virtually identical copying." (citations and internal quotations omitted)), the plaintiff has sufficiently stated a claim for relief under the copyright laws.[5]

The Court further notes that the proposed commercial use of the images has no bearing on their copyrightability. *Bleistein*, 188 U.S. at 251 ("Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd and therefore gives them a real use—if use means to increase trade and to help to make money. A picture is none the less a picture and none the less a subject of copyright that it is used for an advertisement."); *SHL Imaging*, 117 F. Supp. at 311 ("That the photographs were intended solely for commercial use has no bearing on their protectibility." (citing *Bleistein*, 188 U.S. at 251-52)); *see also Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 520 (7th Cir. 2009) ("[T]hey claim that the photos are intended to serve the 'purely utilitarian function' of identifying products for consumers. The purpose of the photographs, however, is irrelevant." (citations omitted)); *Ets-Hokin, Inc.*, 225 F.3d at 1075 ("[W]hether a photograph is used in (or intended for) a museum, an art gallery, a mural, a magazine, or an advertisement does not bear on its copyrightability."). Thus, to the extent that defendant argues that the images are not copyrightable because they serve the function of conveying information about the perfume sold on plaintiff's website, that argument fails.

---

[4] Plaintiff also correctly notes that, to the extent the defendant appears to argue that plaintiff's images serve utilitarian functions and, thus, are not copyrightable, this argument is incorrect. The Copyright Act defines "useful articles" as those articles "having an intrinsic utilitarian function *that is not merely to portray the appearance of the article or to convey information*." 17 U.S.C. § 101 (emphasis added). These images are not useful articles because their "function," as alleged by defendant, is to portray the appearance of the perfume bottles or to convey information about the products for sale. *See Major v. Sony Music Entm't, Inc.*, No. 92 Civ. 2826 (PKL), 1992 WL 210115, at *3 (S.D.N.Y. Aug. 17, 1992) ("Thus, the concept of 'useful article' is only applicable to the case at bar to the extent that it demonstrates that, while the video package cover itself is not copyrightable, the photograph, which is separable from the useful article, is copyrightable.").

[5] The Court's holding is also supported by the opinion recently issued by the Seventh Circuit in

### B. Trademark-Related Claims

Defendant also alleges that FragranceNet cannot prevail on its trademark-related claims because FragranceNet does not have enforceable rights to a valid trademark. Specifically, defendant argues that (1) FragranceNet did not have any enforceable rights to the "FRAGRANCENET" or "FRAGRANCENET.COM" trademarks at the time of defendant's alleged infringement; and (2) FragranceNet does not presently have enforceable rights to its trademarks. The Court addresses each of these arguments in turn.

#### 1. Enforceability of Plaintiff's Trademark at Time of Infringement

Defendant argues that plaintiff did not have enforceable rights to the trademarks "FRAGRANCENET" and "FRAGRANCENET.COM" during the time of defendant's alleged infringement. According to defendant, another entity, Telescents, was using the trademarks during that period, and FragranceNet did not own, was not an assignor, and was not an exclusive licensee of the trademarks. In support of its assertions, defendant attaches to its motion a declaration submitted to the U.S. Patent and Trademark Office by Dennis M. Apfel, the CEO of TeleScents, Inc. That declaration includes the following statements:

- "The declaration is submitted to set forth the salient facts and demonstrate the enormous visibility and consumer awareness of [Telescents'] trademark FRAGRANCENET used on [Telescents'] Web site for on-line retail store services in the fields of perfumery, aromatherapy, candles and hair care preparations." (Def.'s Brief Ex. G ¶ 2.)

- "The consuming public . . . has come to recognize FRAGRANCENET as identifying the source of [Telescents'] retail services." (*Id.* ¶ 14.)

- "[Telescents] has spent more than Ten Million ($10,000,000) Dollars in advertising that features, among other things, the subject mark FRAGRANCENET." (*Id.* ¶ 4.)

- "In the past year alone [Telescents] produced a 30-second and 60-second

---

*Schrock v. Learning Curve International, Inc.*, 586 F.3d 513 (7th Cir. 2009). In that case, a professional photographer sued the owner of the copyright to the "Thomas & Friends" train characters and one of its licensees, alleging that the copyright owner and its licensee had infringed on the photographer's own copyright to photographs of the toys that the photographer had been hired to take. *Id.* at 516-17. The Seventh Circuit noted that courts are divided as to whether photographs constitute derivative works of the copyrighted work that they portray. *Id.* at 518. Accordingly, the court assumed without deciding that each of the photographs at issue constituted a derivative work. *Id.* Although defendants argued that a higher standard of originality is required of derivative works, the court, relying primarily on Second Circuit case law, ruled that the test for originality is the same for derivative works as for original works. *Id.* at 520-21. "[N]othing in the Copyright Act suggests that derivative works are subject to a more exacting originality requirement than other works of authorship. . . . If the photographer's rendition of a copyrighted work varies enough from the underlying work to enable the photograph to be distinguished from the underlying work (aside from the obvious shift from three dimensions to two), then the photograph contains sufficient incremental originality to qualify for copyright." *Id.* at 521-22.

13

television commercial that has aired more than 1,400 times across the country . . . ." (*Id.* ¶ 5.)

- Telescents "has printed and distributed free standing inserts, in the last year alone, in Sunday newspaper and other print media across the country, totaling more than one hundred seventy million (170,000,000)," "advertises on all the major search engines," and "has a program involving more than 25,000 affiliates that display [Telescents'] banner on their Web sites." (*Id.* ¶¶ 6-8.)

As a result of the assertions in this declaration, defendant alleges that FragranceNet neither used nor owned the marks "FRAGRANCENET" and "FRAGRANCENET.COM" since 1997 because these marks were used and owned by Telescents. Defendant also argues that, during the relevant period of FragranceX's alleged infringement, FragranceNet was not an assignee or an exclusive licensee of the "FRAGRANCENET" or "FRAGRANCENET.COM" marks.

As a preliminary matter, in previously deciding that plaintiff's motion to amend its complaint would not be futile, the Court rejected defendant's arguments regarding the registration of the plaintiff's trademarks under the motion to dismiss standard:

> The argument regarding the registration of the mark or the assignment of the mark . . . under the motion to dismiss standard are not a basis for not allowing these claims to go forward, at least to the summary judgment stage. Trademarks can be assigned. So . . . the fact that there was an assignment doesn't mean there can be no claim. As [plaintiff's] counsel also pointed out, there can be claims even independent of the registration of the mark simply by use of the mark. So some of the claims can proceed on that basis, as well. And, in fact, trademark registration is not even a requirement under Section 43(a) of the Lanham Act for all types of claims under that section. So all of the issues regarding the registration of the mark . . . can be litigated if the facts suggest at the summary judgment stage . . . .

Transcript of Oral Argument and Decision in *FragranceNet, Inc. v. FragranceX.com*, No. 06-CV-2225(JFB)(AKT) (E.D.N.Y. July 21, 2009), at 46:25-47:20; 48:04-06. To the extent that defendant attempts to reargue those points that it raised in unsuccessfully opposing the motion to amend, this Court reiterates that these issues cannot be decided at the motion to dismiss stage in this case. "'When a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case.'" *United States v. Crowley*, 318 F.3d 401, 420 (2d Cir. 2003) (quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)).[6] The Court finds that, based on the

---

[6] The Court notes that "[a] court's reconsideration of its own earlier decision in a case may, however, be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009). Although defendant has submitted additional evidence on this issue that was not present in the opposition to the motion to amend, none of the evidence presented to the Court is sufficient to justify granting defendant's motion to dismiss at this juncture.

14

pleadings and submissions that the Court may consider at this stage, the plaintiff has alleged facts sufficient to support its trademark-related claims.

The only case cited by defendant in support of its argument that plaintiff does not have an enforceable trademark is *Hertz Corp. v. Knickerbocker*, 206 F. Supp. 305 (S.D.N.Y. 1962). That case stands for the proposition that only a registrant, and not a related company, can bring suit for trademark infringement under the Lanham Act. *Id.* at 306. However, the term "registrant," as used in the Lanham Act, embraces "the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. As evidenced by the assignment of the marks "FRAGRANCENET" and "FRAGRANCENET.COM" to plaintiff, (Def.'s Brief Ex. H), FragranceNet is an assignee of Telescents, the original registrant of the marks "FRAGRANCENET" and "FRAGRANCENET.COM." Furthermore, Telescents assigned to FragranceNet "the right to commence an action for past or future infringements" of those marks. (Pl.'s Brief Ex. C.) Parties may validly assign trademarks and include with that assignment the right to sue on existing causes of action. *See George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536, 541 (2d Cir. 1944) (noting that although the assignment of a trademark "carries no right to sue for past infringements . . . , by the contract of October 4, 1937 the old corporation in effect conveyed to the plaintiff all its assets, which would include existing causes of action for trade-mark infringement."); *Exakta Camera Co. of Am. v. Camera Specialty Co.*, 154 F. Supp. 158, 160 (S.D.N.Y. 1957) ("If the partnership had [a valid trademark] to assign[,] plaintiff would have had title to the cause of action for past infringement which was expressly assigned in addition to the registrations themselves."). Accordingly, the allegations in the complaint are sufficient to survive a motion to dismiss on the issue of whether FragranceNet may sue defendant for past infringements of the marks that were originally registered by Telescents.[7] *See Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, Civ. A. No. 07-349, 2007 WL 704171, at *3 (S.D.N.Y. Mar. 7, 2007).[8]

---

[7] The plaintiff also correctly notes that a trademark registration is not required to state all trademark-related claims under the Lanham Act. Under the Lanham Act, an action for false designation of origin or false descriptions may be commenced by any person with a commercial interest who is "likely to be damaged" by another's use of a mark that is likely to cause confusion. 15 U.S.C. § 1125(a) (permitting actions for false designation of origin or false descriptions "by any person who believes that he or she is or is likely to be damaged by such act"); *Colligan v. Activities Club of N.Y., Ltd.*, 442 F.2d 686, 691-92 (2d Cir. 1971); *see Danone Asia Pte. v. Happy Dragon Wholesale, Inc.*, Civ. A. No. 05-1611, 2006 WL 845573, at *9 n.10 (E.D.N.Y. Mar. 29, 2006) ("[R]egistration is not required for suits under section 43(a) [of the Lanham Act or] for common law trademark infringement and unfair competition."); *Reed Elsevier v. Who's Who Worldwide Registry, Inc.*, No. 95-7331, 1995 WL 595049, at *3 (2d Cir. Sept. 6, 1995) ("As to standing, we conclude that Reed has a reasonable interest to be protected from Worldwide's false or misleading claims and a reasonable basis for believing that the interest is likely to be damaged by the false or misleading advertising.").

[8] In an attempt to avoid further litigation over the standing issue, plaintiff has requested that it be permitted to add Telescents, Inc. as a party to this litigation. Federal Rule of Civil Procedure 20(a)(1) permits the joinder of plaintiffs if:

(A) the[ plaintiffs] assert any right to

## 2. Enforceability of Plaintiff's Trademark at Present

Defendant next argues that plaintiff does not possess an enforceable trademark at present because the assignment of Telescents' trademarks to FragranceNet was champertous. Defendant argues that this is demonstrated by the fact that the assignment of the trademarks was executed one day prior to plaintiff's motion to amend its second complaint, and by the fact that this assignment included the "right to commence an action for past or future infringements." (Def.'s Brief Ex. H.)

New York Judiciary Law § 489 provides that:

> no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon. . . .

The New York champerty statute is only violated if the "primary purpose of the purchase or taking by assignment of the thing in action" is to bring a lawsuit thereon. *Sprung v. Jaffe*, 147 N.E.2d 6, 9 (N.Y. 1957). Indeed, the New York Court of Appeals has stated that "the purchase must be made for the very purpose of bringing such suit, and this implies an exclusion of any other purpose." *Moses v. McDivitt*, 88 N.Y. 62, 65 (1882); *see also Bluebird Partners, L.P. v. First Fid. Bank,* N.A., 731 N.E.2d 581, 587 (N.Y. 2000) ("[T]he foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction."). If the intent to sue was merely "incidental and contingent" to the purpose of the assignment, an action for champerty will not lie. *Bluebird Partners*, 731 N.E.2d at 586 (quoting *Moses*, 88 N.Y. at 65). The question of the intent and purpose of an assignee is generally one of fact to be decided by the trier of the facts. *Sprung*, 147 N.E.2d at 9 (citations omitted); *see also*

---

relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a). "Rule 20(a) is designed to encourage joinder so long as such joinder would be 'consistent with fairness to the parties.'" *Wilson v. Toussie*, No. 01-CV-4568(DRH)(WDW), 2003 WL 22466219, at *5 (E.D.N.Y. Oct. 8, 2003) (quoting *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 921 (S.D.N.Y. 1995)). Any claims held by Telescents with respect to the trademarks "FRAGRANCENET" and "FRAGRANCENET.COM" arise out of the same occurrence as those on which FragranceNet bases its claims—namely, FragranceX's alleged infringing use of the marks. The questions of law and fact associated with this occurrence will be the same for FragranceNet and Telescents in their claims for relief. Furthermore, the Federal Rules of Civil Procedure encourage hearing the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (footnote omitted). Because defendant has not yet answered the third amended complaint and discovery is still open on the trademark claims, the Court hereby grants this request. *See Wilson*, 2003 WL 22466219, at *5 (allowing for joinder of plaintiffs in proposed third amended complaint).

16

*Bluebird Partners*, 731 N.E.2d at 586 ("This Court's jurisprudence demonstrates that while this Court has been willing to find that an action is *not* champertous as a matter of law, it has been hesitant to find that an action *is champertous as a matter of law*." (collecting cases) (emphasis in original)).

If FragranceNet had a preexisting proprietary interest in the use of the trademarks, and acquired the right to enforce its interest in the trademark, the assignment thereof is not champertous. *See Trust for the Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 199-200 (2009); *see also Trust for the Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*, No. 07-cv-1050, 2010 WL 59276 (2d Cir. Jan. 11, 2010). Accordingly, the Court finds that there is a factual issue regarding the primary purpose for which Telescents assigned its trademarks to FragranceNet, which the Court cannot resolve at the motion to dismiss stage in this case.[9]

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied. Defendant is directed to file an answer within twenty days of this Memorandum and Order, and the parties are directed to continue with discovery in accordance with the direction of Magistrate Judge Tomlinson.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 14, 2010
Central Islip, New York

\* \* \*

The attorneys for plaintiff are Robert L. Sherman and Bradford E. Young of Paul, Hastings, Janofsky, & Walker, LLP, 75 East 55th Street, New York, NY 10022. The attorneys for defendant are John W. Dozier,

---

[9] The Court further notes that defendant's champerty claim must overcome an additional hurdle because New York Judiciary Law § 489 has been interpreted by New York courts to only preclude the "acquisition of a cause of action by a stranger to the underlying dispute . . . in consideration of a bargain for some part of the thing involved." *Richbell Info. Servs., Inc. v. Jupiter Partners*, 723 N.Y.S.2d 134, 139 (App. Div. 2001) (quoting *Jamaica Pub. Serv. Co. v. La Interamericana Compania de Seguros Generales, S.A.*, 693 N.Y.S.2d 6, 7 (App. Div. 1999)); *Bellarno Intern. Ltd. v. Irving Trust Co.*, 560 N.Y.S.2d 287, 288 (App. Div. 1990) ("Nor was the assignment champertous. Here, plaintiff was not a stranger to the transaction, and the assignment was made for the purpose of facilitating a recovery as compensation for an alleged wrong in an action already commenced and pending." (internal citation omitted)). In *Anisom Corp. v. Banque Exel, S. A.*, 338 N.Y.S.2d 848 (App. Div. 1972), the Appellate Division reversed a finding of champerty and granted a motion for a rehearing when evidence was submitted that demonstrated that the allegedly champertous assignment was between a parent corporation and its subsidiary. *Id.* at 849-50. Similarly, in the instant case, FragranceNet is the parent company of Telescents. Moreover, under the facts as alleged, FragranceNet has a direct interest in the resolution of the trademark claims. Thus, given these allegations, this issue cannot be resolved in defendant's favor at this stage.

17

Jr. and Cameron W. Gilbert of Dozier Internet Law, P.C., 11520 Nuckols Road, Suite 101, Glen Allen, VA 23059.